FIRST NATIONAL CITY BANK, Respondent, v. CITY OF NEW YORK et al., Appellants. —

Concur — Botein, P. J., Stevens, Steuer and McNally, JJ.; McGivern, J., dissents in the following memorandum: I dissent and would grant defendant-appellant's motion for summary judgment. The lease was prepared by the attorneys for First National City Bank and by immemorial canons of construction it must be construed against the bank. It is a lease not intended for laymen. It was for the benefit of a bank and it used language which had a meaning all its own in the narrow banking world wherein the participants moved. When paragraph 45 forbade the city to lease any other premises in the Hunts Point Market for use as a bank, trust company, etc., " *or for the receipt of money for transmission*", it must be assumed that the skilled, prestigious and sophisticated lawyers who drew the lease used this particular banking terminology in a manner not independent of or divorced from its accepted usage. And "the receipt of money for transmission" has long had an unmistakable and precise connotation in the banking fraternity. The phrase is from the specialized nomenclature long recognized by the technicians of finance. It meant one thing. And it did *not* mean the physical hauling of money bags. That the crucial phrase had no relevance whatsoever to the

physical movement of money bags (see, e.g., New York Banking Law, §§ 131, 161, 166, 180, subd. [6]; §§ 200, 201, 234, subd. 8; § 383, subd. 4; § 641). Section 131 and subdivision 6 of section 180 expressly forbid unauthorized persons or groups from encroaching on the province of banks relative to the receipt of deposits, the making of discounts, the issuing of notes for circulation, etc., or "receiving money for transmission". Section 18 of the New York General Corporation Law provides that no corporation except one licensed pursuant to article 13-A of the Banking Law or incorporated prior to the year 1850 to promote the welfare of immigrants excepting only a telegraph company of a certain capitalization as revealed to the Public Service Commission shall "possess the power of *receiving money for transmission* or of transmitting the same, by draft, travellers check, money order or otherwise". (Italics supplied.) (See, also, 1914 Opns. Atty. Gen. 173, 176; 1911 Opns. Atty. Gen. 621.) To the effect that a bank's use of a messenger service does not constitute branch banking, the messenger being the agent of the customer (as in the instant case), see ruling of the Federal Reserve Board reported at 12 CFR 208.110 (1967). Further, the defendant participants obtained a favorable ruling from the New York Department of Banking, after a disclosure of their contemplated activities. Even Citibank admits that any customer of another bank may use a third person, "including an armored car service", to transport the customers' deposits from the customers' office to a banking office. But it objects to such an operation if the movement originates from a point mutually convenient to the customer and the car service. It is an absurdity to say that convenience can transmute an otherwise legal operation into an illegality. To prevail here, the plaintiffs' position must be made of sterner stuff. The problem then is essentially legal and referable to one narrow clause and its legal meaning. No further hearings are necessary. The affiants of Citibank do not even now say they were or are confused. They do not even now say they did not mean the words to reflect their definition in the banking profession. The factual presentation of both sides is essentially the same. The lease and arrangements of both parties have been set forth. The defendants even indorse the plaintiffs' Statement of Facts. The activity of U. S. Trucking is visible. Its trucks operate from a neutral looking office of nondescript character and decor. Citibank cannot be aggrieved by the legal advertising of the facilities offered by competitors. Indeed, Citibank says "it is accustomed to competing vigorously with nearby or adjoining banks". Any further inquiry would only elucidate the obvious. And finally, if Citibank did have in its possession any other facts, on a motion for summary judgment, it should have made a full breast. Significantly, although Citibank did not prevail in its motion for a preliminary injunction herein, no appeal was taken by the bank from the denial thereof. In the blinding light of hindsight, one may assume the draftsmen of the lease simply did not envisage a trucking company coming into the Hunts Point preserve and hauling money out of it and into the coffers of rival banks. If this had been anticipated, skilled draftsmen as they were, by a subtle twist of phrase, they could have fended off the defendants. But they did not. And their failure to foresee the trucking of money bags does not make the operation illegal. Nor does it make a bank out of the United States Trucking Corporation. And what is more, there is something wholesome in permitting the tenants of the Hunts Point Market to go on dealing with the banks of their own choice, when their banks are outside the gates.